Marvin M. MHOON  *v.*  STATE of Arkansas

CR 06-1000                                    251 S.W.3d 244

Supreme Court of Arkansas
Opinion delivered March 1, 2007

*John F. Gibson, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

J IM GUNTER, Justice. Appellant, Marvin M. Mhoon, appeals the Drew County Circuit Court's rulings denying appellant's motion in limine to prohibit the introduction of his breathalyzer test results into evidence, overruling appellant's objections to the introduction of the breathalyzer results, and refusing to take judicial notice of the Arkansas Regulations for Alcohol Testing. We reverse and remand for a new trial.

On November 24, 2003, appellant was pulled over for speeding by Officer David Wesson of the Drew County Sheriff's Department. When Officer Wesson approached Mhoon's vehicle, he noticed that appellant had blood on his face. Officer Wesson then realized that appellant's vehicle matched the description of a vehicle belonging to a person reportedly involved in a fight at All Star Sports Bar earlier in the evening. Officer Wesson asked appellant if he had been drinking, and appellant stated that he had consumed a few beers and played pool. After asking appellant if he needed medical attention, which appellant declined, Officer Wesson performed three field-sobriety tests on appellant. The tests administered involved: the one-legged stand test where appellant was asked to stand on one leg and count; the finger-to-nose test where appellant was asked to hold his arms to his side and touch his nose with the point of his index finger; and the reverse counting test where appellant was asked to use his fingers to count one-to-five and five-to-one until instructed to stop. Appellant failed all three tests and was taken to the county detention facility. Officer Wesson called Officer Rickey Rausch from the Monticello Police Department to administer the blood alcohol test on appellant. Appellant signed the DWI/DUI statement of rights after checking on the form that he understood all parts of the rights; that he agreed to take the breathalyzer test; and that he did not want an additional test at his own expense. Officer Wesson then observed appellant for a period of time, and in that time, appellant's burping negated

the test. Officer Wesson testified that he had to wait twenty minutes before he could resume his observation. After the observation, Officer Rausch administered the breath test to appellant. The results of the breathalyzer test showed that appellant had a blood alcohol level of 0.119%. Officer Wesson wrote a citation to appellant for speeding and DWI.

On February 23, 2006, a jury found appellant guilty of DWI in the Drew County Circuit Court. In an in-chambers hearing on the day of trial, appellant's attorney told the court that the rights form signed by appellant was defective with regard to compliance with Ark. Code Ann. § 5-65-204(e)(2) and (3) (Supp. 2001). Appellant made a motion in limine to prevent the introduction of the breath-test results because the rights form used did not meet the requirements of *Daniels v. State*, 84 Ark. App. 263, 139 S.W.3d 140 (2003), an opinion delivered one month before appellant's arrest. The State agreed that the rights form did not meet the requirements of the *Daniels* case, but argued that appellant's motion was not a motion in limine, but actually a motion to suppress that must be filed no later than ten days before the date of trial. The court denied appellant's motion, finding that it was "in the nature of a motion to suppress," and filed untimely. Appellant now brings this appeal from the circuit court's ruling.

When considering a denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). When reviewing a denial of a motion in limine or a refusal to take judicial notice, we use the abuse-of-discretion standard. The trial court has broad discretion in its evidentiary rulings; hence, the trial court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002); *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001).

For his first point on appeal, appellant argues that the trial court erred in denying his motion in limine to prohibit the introduction of the breathalyzer test results into evidence. In response, the State argues that appellant's motion to prohibit the introduction of the breathalyzer test was a motion to suppress and not a motion in limine. The State asserts that, because the motion made by appellant was a motion to suppress, and a motion to

suppress must be filed no later than ten days before trial, the motion made by appellant was untimely.

We first turn to whether the motion made by appellant on the day of trial was a motion to suppress or a motion in limine. Appellant contends that the breathalyzer test results were not illegally obtained evidence because they were obtained pursuant to Ark. Code Ann. § 5-65-202, commonly referred to as the implied-consent law. Appellant argues that, because the results were obtained by consent, they were not illegally obtained, and his objection to their introduction was not a motion to suppress. The State argues that appellant was trying to suppress illegally obtained evidence by arguing that the breathalyzer test was illegally per-formed because he was not properly advised of his rights concern-ing the test. The State further argues that appellant's motion was an untimely motion to suppress.

We have consistently held that courts should not be guided blindly by titles but should look to the substance of motions to ascertain what they seek. *Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987). It would not be in the interest of justice and fair play to be blindly guided by the title of a motion or pleading. *Id.* A motion in limine to suppress the use of evidence is distin-guishable from a motion to suppress. *Payne v. State*, 327 Ark. 25, 29, 937 S.W.2d 160, 162 (1997) (citing *Jenkins v. State*, 301 Ark. 20, 21, 781 S.W.2d 461, 462 (1989)). A motion to suppress evidence presupposes that the evidence was illegally obtained. *Id.* A motion in limine deals with the admissibility of evidence, rather than illegally obtained evidence. *Id.*

Arkansas Code Annotated § 5-65-204(e)(3) provides:

> The refusal or failure of a law enforcement officer to advise a person of this right and to permit and assist the person to obtain a test *shall preclude the admission of evidence* relating to a chemical test taken at the direction of a law enforcement officer.

(Emphasis added.) Arkansas Rule of Criminal Procedure 16.2 pro-vides as follows:

> (a) Objection to the use of any evidence, on the grounds that it was illegally obtained, shall be made by a motion to suppress evidence. The phrase "objection to the use of any evidence, on the grounds that it was illegally obtained" shall include but is not limited to evidence which:

1. Consists of tangible property obtained by means of an unlawful search and seizure; or

2. Consists of a record of potential testimony reciting or describing declarations or conversations overheard or recorded by means of eavesdropping; or

3. Consists of a record or potential testimony reciting or describing a confession or admission of a defendant involuntarily made; or

4. Was obtained as a result of other evidence obtained in a manner described in subdivisions one, two, and three; or

5. Consists of the prospective in-court identification of the defendant based on an unlawful pre-trial confrontation.

The State does not dispute appellant's contention that the rights form used in this case was identical to the one that the court of appeals found to be defective in *Daniels, supra*. In *Daniels*, the defendant was informed that he could have an additional test at his own expense, but was not advised that he would be reimbursed for the cost of the additional test if found not guilty. The court held that the rights form violated Ark. Code Ann. § 5-65-204(e) by failing to inform the accused that he would be reimbursed for the cost of an additional breathalyzer test if found not guilty and that the trial court erred in admitting the accused's breathalyzer test results. The *Daniels* court considered the issue as one of admissibility. Further, in *Kay v. State*, 46 Ark. App. 82, 877 S.W.2d 957 (1994), the appellant moved to exclude evidence of a breathalyzer test on grounds that the officer had failed to advise appellant of his right to an additional test and to assist him in obtaining such a test. The court of appeals held that appellant's motion was not a motion to suppress under Rule 16.2. *Id.* at 85, 877 S.W.2d at 959 (citing *Scalco v. State*, 42 Ark. App. 134, 856 S.W.2d 23 (1993) (holding that the breath test did not result from an unlawful search, seizure, or arrest)).

In the present case, appellant consented to the breathalyzer test under the implied consent law pursuant to Ark. Code Ann. § 5-65-202. Because the breathalyzer test was not illegally obtained, Rule 16.2 does not apply, and the issue is admissibility. Admissibility is covered by our rules, and with respect to proce-

dural issues, by statutes not in conflict. *Reed v. State*, 317 Ark. 286, 878 S.W.2d 376 (1994). No argument has been made that a conflict exists between our rules and section 5-65-204, and we find none. Therefore, the motion made by appellant in this case to prohibit the introduction of the breathalyzer test into evidence was not a motion to suppress. Thus, we hold that the trial court erred in denying appellant's motion.

Because we have decided Rule 16.2 does not apply, section 5-65-204 determines admissibility. Here, there is no dispute that the form used to advise appellant failed to meet the requirements of section 5-65-204, because the rights form had been found defective. *See Daniels, supra*. Considering the facts here in light of section 5-65-204, we hold that the trial court erred in denying the motion to prohibit the introduction of the test results.

For his second point on appeal, appellant argues that the trial court erred in overruling his objection to the introduction of the breathalyzer test results. The State responds, arguing that, even if the trial court did err in admitting the breathalyzer, appellant's conviction must be affirmed because of his failure to perform the three field-sobriety tests. The State relies on our holding in *Porter v. State*, 356 Ark. 17, 145 S.W.3d 378 (2004), for the proposition that proof of a motorist's blood-alcohol content is not necessary for a conviction of DWI on the ground of intoxication. In *Porter,* the appellant argued on appeal that the trial court erred in admitting into evidence the blood alcohol test performed by the hospital because the test was not performed in compliance with Ark. Code Ann. § 5-65-204 (Repl. 1997). However, we disposed of this argument because it was not preserved below. This court's opinion in *Porter* dealt solely with the appellant's directed verdict motion challenging the sufficiency of the evidence. Therefore, *Porter* is inapplicable to the present case.

In the present case, the State called Officer Wesson, who testified that he asked appellant to perform three field sobriety tests: a one-legged stand, a finger-to-nose test, and a reverse-counting test. Officer Wesson testified that appellant kept putting his foot down during the one-legged stand, that appellant moved his head to his finger when asked to touch his finger to his nose, and was unable to accurately count backwards during the reverse-counting test. Dr. Randall McKiever treated appellant's head injury a few days after the accident. Dr. McKiever testified that, in his opinion, appellant may not have been able to stand on one leg and hold his other foot six inches above the ground for thirty

seconds without wavering, and that appellant would probably have been compromised after receiving the head injury. The State argues that appellant should be found guilty of DWI if he operated a vehicle while intoxicated or blew a .08 or more on the breathalyzer test, and the jury was instructed on both.

For the reasons set out in the first point, we find that the trial court erred in admitting the breathalyzer results over the objection of appellant. Even when a trial court errs in admitting evidence, we have held that when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm the conviction. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003) (citing *Cobb v. State*, 340 Ark. 240, 12 S.W.3d 395 (2000)). In the present case, we can neither say that the evidence of guilt was overwhelming nor that the error was slight. The jury was instructed on both the improperly admitted breathalyzer test and the other relevant evidence of intoxication. Because the jury's verdict was general, we cannot determine how it came to its conclusion. Considering the case as a whole, we cannot say that the error in this case was harmless.

For his third point on appeal, appellant argues that the trial court erred in refusing to take judicial notice of the Arkansas Regulations for Blood Alcohol Testing (the Regulations). Appellant submits that he asked the court to take judicial notice of (1) the prescribed observation period as provided by the Arkansas Regulations for Alcohol Testing, and (2) the regulation setting the requirements for breathalyzer machines. The State responds that, at trial, appellant asked the court to take judicial notice of a superseded version of the regulations. The State argues that the trial court did not err by refusing to take judicial notice of a superseded version of the Health Department regulations or by not admitting the regulations into evidence.

During trial, appellant asked the court to take judicial notice of the Regulations. The State objected, arguing that the 1989 version of the regulations being offered by appellant was not the most recent. The State also objected on the grounds of hearsay, but the trial court stated that it was not hearsay, and that the real question was whether it was relevant to anything that the jury would decide. Appellant argued that the Regulations were relevant to the weight of the evidence on the validity of the results of the breath test. The court decided that the testimony of the officers showed that they had observed appellant for the twenty minutes

required by the Regulations. Upon appellant's request for the court to take judicial notice of the Regulations setting the requirements for breathalyzer machines, the circuit court stated that because the Regulations were confusing, it would take an expert to understand them.

Appellant relies on *State v. Jones*, 338 Ark. 781, 3 S.W.3d 675 (1999), to support his argument. In *Jones*, the State argued to the trial court that the alcohol testing in that case was conducted in a manner already approved by the State Health Department and that the standards, machinery, and certification procedures mandated for alcohol testing under the DWI statute were also applicable to testing under the BWI statute. We held that, although the trial court did not orally take formal judicial notice of the regulations, the State's argument was sufficient to place the trial court on notice that it was relying on them. We stated:

> A party is not required to formally proffer, prove, or introduce published regulations into evidence, so long as that party's reliance on such regulations is brought to the attention of the trial court. *See, e.g., Peters, supra; Mitchell, supra; Touzin, supra.* This is because regulations adopted pursuant to the authority of a statute are considered part of the substantive law of this State, thus creating a presumption that the trial court judicially knows them. *Manufacturer's Casualty Ins. Co. v. Hughes*, 229 Ark. 503, 316 S.W.2d 829 (1984). . . . An agency regulation is part of the substantive law that the trial court must determine and then apply to the facts of the case before it. *Washington, supra.* In *Touzin, supra*, we succinctly stated what is required to preserve arguments premised upon regulations for appeal:
>
> > Judicial notice may be taken of [a] regulation, but the proper procedure is for the party relying on such judicial notice to aid the court or administrative law judge by *calling attention to that regulation.*

*Jones*, 338 Ark. at 786, 3 S.W.3d at 677 (emphasis in original). Taking judicial notice of a regulation is akin to taking judicial notice of a statute or other form of law upon which the judge instructs a jury. *Washington v. State*, 319 Ark. 583, 586, 892 S.W.2d 505, 506 (1995).

We agree with the State's argument that the trial court did not err by refusing to take judicial notice of the regulations or by not admitting the Regulations into evidence. Under Ark. R. Evid. 201(c), a trial court "may take judicial notice [of adjudicative facts]

whether requested or not," although under Rule 201(d), a court "shall take judicial notice if requested by a party and supplied with the necessary information." Here, appellant did ask the trial court to take judicial notice of the Regulations, but asked the court to take judicial notice of a 1989 version instead of the current 1995 revised version. In *St. Paul Ins. Co. v. Touzin*, 267 Ark. 539, 592 S.W.2d 447 (1980), we held that judicial notice could be taken of a Department of Health regulation requiring stricter compliance with a statute concerning admissibility of blood-alcohol tests, but the proper procedure for judicial notice is for the party relying on such judicial notice to aid the court or administrative law judge by calling attention to that regulation. Here, appellant merely called attention to a superseded version of the regulations.

The Regulations are adopted pursuant to the authority of a statute and considered part of the substantive law, thus creating the presumption that the trial court judicially knows them.[1] *See Jones, supra.* In this case, if we presume that the trial court already judicially knew the Regulations, then it was unnecessary for the court to take judicial notice of them or admit them into evidence. The trial court in this case decided that the testimony of Officers Wesson and Rausch was sufficient to explain the requirements of the Regulations and whether they were complied with. Officer Wesson testified that he resumed the twenty-minute observation period after the test was negated, and there were no new occurrences to warrant restarting the observation period. The requirement stated in the Regulations that there be a twenty-minute observation period was addressed in the officer's testimony. Therefore, we hold that the trial court did not err in not taking judicial notice of the Regulations. Accordingly, we affirm on this point.

We reverse and remand for the reasons stated above.

Affirmed in part; reversed and remanded in part.

---

[1] The Arkansas Regulations for Blood Alcohol Testing are duly adopted and promulgated by the Arkansas Department of Health as approved by the Arkansas State Board of Health pursuant to the authority expressly conferred by the laws of the State of Arkansas, Act 106 of 1969 as amended and Act 346 of 1957 as amended, the same being Arkansas Code, Title 5, Chapter 65 and Act 518 of 1995 as amended.