

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-14-920

| | |
|---|---|
| CHRISTOPHER ADAM BRICKEY<br>APPELLANT | **Opinion Delivered** March 11, 2015 |
| V. | APPEAL FROM THE GRANT<br>COUNTY CIRCUIT COURT<br>[NO. 27CR-14-14] |
| | HONORABLE CHRIS E WILLIAMS,<br>JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Christopher Brickey was charged with one count of residential burglary and one count of theft of property. A Grant County jury found him guilty of both charges and sentenced him as a habitual offender to forty years in the Arkansas Department of Correction; he was also fined $15,000. Brickey appeals, challenging the sufficiency of the evidence to support his convictions. We affirm.

Brickey's sole argument on appeal is that the circuit court erred in denying his motions for directed verdict. A directed-verdict motion is a challenge to the sufficiency of the evidence. *Van Winkle v. State*, 2014 Ark. App. 591, 445 S.W.3d 542; *Draper v. State*, 2010 Ark. App. 628, 378 S.W.3d 191. When reviewing a challenge to the sufficiency of the evidence, the appellate court will affirm the conviction if there is substantial evidence to

SLIP OPINION

support it, when viewed in the light most favorable to the State. *Van Winkle*, *supra*. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another without resort to speculation or conjecture. *Id*. With these standards in mind, we turn to the facts presented at trial.

Robbin Minchew was the victim of the residential burglary and theft of property at issue. She is a second cousin to Brickey. On January 17, 2014, she left her home for work, leaving the house unlocked, as was her general habit. At about 9:45 a.m. that morning, Brickey texted Robbin to determine whether she was at work and to inquire about going to lunch. Although they were related, Robbin and Brickey rarely communicated via text message; Robbin therefore found the text unusual because this was the first time that Brickey had ever contacted her at work or offered to take her out to lunch. When Robbin returned home that day, she discovered that her house had been burglarized. A white Xbox and her wallet were missing.

Robbin had communication with her stepdaughter, Destiny Minchew. Destiny informed Robbin that she had seen Brickey at Robbin's house earlier in the day, outside on the patio. Destiny asked him why he was there, and he said he was looking for Robbin. When Destiny said that Robbin was at work, Brickey said he was there to speak to Destiny's uncle, Tommy. Destiny told him that he needed to leave because he was not welcome there. Brickey "mouthed some words" and got in his car; Destiny followed him down the driveway until he turned right, headed toward Pine Bluff.

2

After discovering that the items were missing from her house,[1] Robbin texted Brickey. She advised him that she had a videotape of him burglarizing her house, when in reality she did not. She also told him that if he would bring her belongings back, she would not call the police. Brickey texted her back with a message that said, "if u say u have video with me on it then take it [to] the police . . . i don't have shit nor [am] I worried cause I have an air tight alibi . . . so u do what u have to do and so will I . . . but remember Robbin . . . I have been doing this a long time."

Some of the items taken from Robbin's home were eventually recovered. Evelyn Fachin, a mail carrier, found Robbin's wallet on the side of the road about 1:30 in the afternoon as she was running her route on January 17, 2014. Detective Robert Bird of the Grant County Sheriff's Office ran a search on Leads Online and found a transaction showing that Brickey had sold an Xbox matching the description of the stolen Xbox at a pawn shop in Pine Bluff. Sarah Milner, the manager of the pawn shop, confirmed that Brickey had come into her shop to sell an Xbox on January 17; she gave him $60 for it.[2] The pawn ticket listed Brickey's name as the pledgor/seller.

Based upon this evidence, Brickey was convicted of residential burglary and theft of property. A person commits the offense of residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of

---

[1]Other items, including a camera and some computer games, were found in a doghouse outside the back door of Robbin's house.

[2]Robbin subsequently repurchased the Xbox from the pawn shop, and the circuit court ordered Brickey to pay her $60 in restitution.

committing any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2006). A person commits the offense of theft of property if the person knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103 (Supp. 2011).

As to the conviction for residential burglary, Brickey argues that, while there is substantial evidence to demonstrate that he was on Robbin's property, there was no evidence, "either direct or circumstantial," that he entered her residence or that he did so in order to commit a theft. His argument is unavailing. The evidence showed that on the morning of the burglary, Brickey texted the victim to confirm her whereabouts. Later that morning, he was at Robbin's house around the time of the burglary; he was observed driving his car toward Pine Bluff immediately thereafter; and he was in possession of Robbin's Xbox at the time he sold it in a pawn shop in Pine Bluff. He does not dispute that the Xbox came from inside Robbin's house, nor does he attempt to explain how he otherwise came into possession of it. Unexplained possession of recently stolen property; efforts to avoid detection, such as fleeing from the scene of the crime and attempting to dispose of incriminating evidence; and close proximity in time and distance linking the accused, the stolen property, and the burglarized residence are all corroborating circumstances to be considered in determining one's guilt of burglary. *Baca v. State*, 2013 Ark. App. 524; *Turner v. State*, 64 Ark. App. 216, 984 S.W.2d 52 (1998). We therefore conclude there was

sufficient evidence from which the jury could find that Brickey committed the offense of residential burglary without having to resort to speculation and conjecture.

As to the conviction for theft of property, Brickey concedes that there was substantial evidence that he possessed the Xbox and sold it at the pawn shop; nonetheless, he insists that there was insufficient evidence to show that he "had a clue that his possession of the property was unauthorized." His argument is again without merit. Robbin testified that Brickey did not have permission to be at her house or to go into her house on the day of the burglary. When Robbin told him that she had him on videotape burglarizing her house, he claimed to have "an air tight alibi." Destiny testified that she told him to leave Robbin's property because he was not welcome there. No evidence was introduced that would have indicated, for example, that Robbin had loaned the Xbox to Brickey. The unexplained, unsatisfactory, or improbable explanation for possession of recently stolen property may be considered as evidence of guilt of theft of property. *Gray v. State*, 2009 Ark. App. 572 (citing *Ward v. State*, 280 Ark. 353, 356, 658 S.W.2d 379, 381 (1983)). In sum, the evidence all clearly pointed to his unauthorized possession of Robbin's property. As such, we affirm his convictions.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Philip C. Wilson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.